UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:

ALTO TROMEN, S.A.,

    Plaintiff,

v.

NODUS INTERNATIONAL BANK, INC.,
NODUS FINANCE, LLC,
NODUS FINANCIAL HOLDINGS, INC.,
TOMAS NIEMBRO CONCHA, AND
JUAN RAMIREZ,

    Defendants.
_____/

## COMPLAINT

Plaintiff Alto Tromen, S.A. ("Alto Tromen") sues Defendants Nodus International Bank, Inc. ("Nodus Bank"), Nodus Finance, LLC ("Nodus Finance"), Nodus Financial Holdings, Inc. ("Nodus Financial Holdings"), Tomas Niembro Concha ("Concha"), and Juan Ramirez ("Ramirez"), and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action within the jurisdiction of this Court because the amount in controversy exceeds $75,000.00, exclusive of interest and taxable costs, pursuant to 28 U.S. Code § 1332(a).

2. Alto Tromen is a corporation that was incorporated in Argentina and whose principal place of business is in Argentina.

3. Nodus Bank is a corporation incorporated in the Commonwealth of Puerto Rico and whose principal place of business is in Puerto Rico.

1

4. Nodus Finance is a Florida limited liability company that has its principal place of business in Miami, FL.

5. Nodus Financial Holdings is the sole member of Nodus Finance.

6. Nodus Financial Holdings is a corporation that was incorporated in Florida and has its principal place of business in Miami, FL.

7. Concha is a Citizen of the State of Florida.

8. Ramirez is a Citizen of the State of Florida.

9. Venue is proper in the United States District Court for the Southern District of Florida (Miami Division) pursuant to 28 U.S. Code § 1391(b)(1) and (2) and 28 U.S. Code § 1391(d) because all Defendants reside in this judicial district and because it is the judicial district where a substantial part of the events or omissions giving rise to the Complaint occurred. Alternatively, if Nodus Bank is not considered a resident of any judicial district of the State of Florida for purposes of 28 U.S. Code § 1391(b)(1), joinder of Nodus Bank is permissible under 28 U.S. Code § 1391(c)(3).

**RELATIONSHIP BETWEEN DEFENDANTS**

10. Nodus Bank is an International Banking Entity ("IBE") under the laws of the Commonwealth of Puerto Rico that is authorized to provide international banking services.

11. Nodus Finance is a finance company that offers various types of financial products, including auto loans, debt consolidation, home improvement loans, and business loans.

12. Nodus Financial Holdings is the managing member of Nodus Finance.

13. Nodus Bank, Nodus Finance, and Nodus Financial Holdings work in the interest of one another and share resources and employees.

14. Nodus Bank, Nodus Finance, and Nodus Financial Holdings have common managers, directors, and officers.

15. Prior to October 30, 2023, Ramirez was the registered agent of Nodus Finance and Nodus Financial Holdings and was a director and the president of Nodus Financial Holdings.

16. As of October 30, 2023, Concha has serve as the registered agent for Nodus Finance and Nodus Financial Holdings and is a director and president of Nodus Financial Holdings.

17. Concha is the President and Chief Executive Officer of Nodus Bank.

18. Ramirez and Concha are the only two shareholders of Nodus Bank.

19. Ramirez and Concha sit on various boards and committees of Nodus Bank that are responsible for making all decisions regarding the operations of Nodus Bank.

20. Ramirez is an employee, director, manager, or officer of Nodus Bank.

21. Concha and Ramirez are managers of Nodus Finance (a manager-managed Florida LLC) and sit on Nodus Finance's management committee.

22. Ramirez and Concha communicate with Nodus Bank customers on behalf of Nodus Bank with the authority to bind Nodus Bank.

23. Nodus Finance and Nodus Financial Holdings operate out of an office located at 1200 Brickell Ave, Suite 425, Miami, FL 33131.

24. This office on Brickell also serves as a back-office for Nodus Bank.

25. The Nodus Bank logo can be found in this office.

26. Nodus Finance is a financing arm of Nodus Bank.

27. Nodus Finance uses its lawful presence in the State of Florida to solicit loan commitments and other debt-related financial products.

28. Nodus Finance funds these transactions by selling them to Nodus Bank.

29. Nodus Finance then agrees to act as the servicer.

30. For example, Nodus Finance approved a loan of $1,500,000.00 on or about May 2, 2018, and then sold the executed promissory note to Nodus Bank for $1,500,000.00 later that day.

*See Nodus International Bank, Inc., v. Francisco Arocha-Hernandez, et. al*, Case No. 1:20-cv-23112-RNS, at ECF No. 1, ¶¶ 9 and 10, and ECF No. 1-3, Purchase and Sale Agreement).

31. Nodus Bank uses its customers' deposits to purchase and fund loans and other financial products from Nodus Finance and/or Nodus Financial Holdings.

32. Nodus Bank does not maintain the minimum reserves required by law and required by its own internal rules and operating procedures.

**DEFENDANTS MANUFACTURE A LIQUIDITY CRISIS THROUGH SELF-DEALING**

33. Alto Tromen opened an account (#14825) with Nodus Bank on or about January 28, 2022.

34. Nodus Bank represented to Alto Tromen that it would safeguard its funds and that the funds would be available for withdrawal at any time. On January 11, 2023, Alto Tromen initiated a wire transfer payment (Transfer #199498) in the amount of $300,000.00 from its Nodus Bank account identifying Valle Alto S.A. as the beneficiary.

35. Nodus Bank confirmed by email that the transfer had been authorized and executed.

36. Nodus Bank failed to execute the transfer, and the beneficiary never received the money.

37. Over the course of the next several weeks, Nodus Bank refused to provide any meaningful responses or answers to dozens of inquiries by Alto Tromen as to why Nodus Bank would not comply with its payment instructions, other than the transfers were "in process."

38. On or about February 17, 2023, Alto Tromen attended a telephone conference with Ramirez who promised Alto Tromen that the full amount of the transfer would be sent that week.

39. Transfer #199498 did not occur.

40. Nodus Bank, Concha, and Ramirez had no intention of fulfilling this promise to transfer Alto Tromen's funds.

41. On or about March 14, 2023, Alto Tromen initiated another transfer in the amount of $30,000.00 (Transfer #202865).

42. On or about March 20, 2023, Nodus Bank, on instructions from Concha and Ramirez or with their knowledge, falsely claimed that the account lacked funds to cover the transfer.

43. Alto Tromen immediately disproved this falsehood by emailing Nodus Bank a copy of their account statement showing sufficient funds to cover both transfers.

44. Transfer #202865 was not executed.

45. Unbeknownst to Alto Tromen, Nodus Bank was experiencing a liquidity crisis intentionally created by Concha and Ramirez.

46. Between January 1, 2023, and May 1, 2023, Nodus Bank's books reflect an increase in loans to corporations from $53,424,821.78 to $71,359,702.57.

47. Concha and Ramirez knew of and approved of these loans and played a substantial role in the transfer of the funds.

48. Between of January 1, 2023, and May 1, 2023, Nodus Bank drained its operational account from $54,866.962.46 to in its operational account to $17,866,972.38.

49. Concha and Ramirez knew of and approved of these transfers and played a substantial role in the transfer of the funds.

50. Between January 1, 2023, and May 1, 2023, Nodus Bank liquidated over $1,000,000.00 in investment accounts.

51. Concha and Ramirez knew of and approved of these liquidations and played a substantial role in the transfer of the funds.

52. Nodus Bank used its customers' deposits to loan or transfer money to other companies controlled, owned, or affiliated with Ramirez and Concha.

5

53. Ramirez and Concha used the funds for their personal benefit.

54. Defendants' actions created a liquidity crisis at Nodus Bank.

55. During the crisis, Nodus Bank continued to accept deposits from new customers and lied to existing customers who were trying to transfer their money out of Nodus Bank about why they had not received their money.

56. On or about May 8, 2023, Nodus Bank, Concha, and Ramirez executed a Plan of Voluntary Liquidation and Dissolution of Nodus International Bank, Inc. (the "Plan") and amended the Plan on August 3, 2023.

57. Pursuant to the Plan, Nodus voluntarily surrendered its IBE license under Act No. 52-1989 and Puerto Rico's Office of the Commissioner of Financial Institutions ("OCIF") initiated a liquidation and dissolution process.

58. OCIF appointed Driven P.S.C. ("Driven") as the liquidator.

59. Thereafter, the Panama Superintendency of Banks issued Resolution SBP-BAN-R-2023-01296 ("Resolution") whereby PSB took administrative and operational control of Atlas Bank, another financial institution in which Concha and Ramirez had a material financial interest or an ownership interest, and suspended Atlas's banking operations.

60. On October 3, 2023, the Commissioner of Financial Institutions filed a Complaint and Provisional and Permanent Order for the Appointment of a Receiver and License Revocation ("Complaint"), case number C-23-D-004, before OCIF.

61. Based on the reports submitted by Driven to OCIF, OCIF charged Concha and Ramirez with self-dealing and the theft of funds that belonged to Nodus Bank's customers.

62. Concha and Ramirez executed an agreement on behalf of Nodus Bank with Atlas Bank, the financial institution owned and operated by Concha and Ramirez that the Panamanian

6

financial regulator shutdown for malfeasance, wherein Atlas Bank would purchase Nodus Bank's assets as part of the liquidation.

63. Concha and Ramirez, on behalf of Nodus Bank, then paid Financial Technology and Marketing Services, Ltd. ("Financial Technology"), also owned by Concha and Ramirez, with Nodus Bank's funds to "assist" in this liquidation. Financial Technology, which did not provide any material benefit to the liquidation process and was a sham, would then disburse the funds to Concha and Ramirez directly.

64. Concha and Ramirez admitted to these allegations.

65. In the liquidation process, Nodus Bank offered its customers two options: 1) Accept a multi-year Certificate of Deposit with a nominal interest rate with Alter Bank, a financial institution owned and operated by Concha and/or Ramirez; or 2) Accept a multi-year promissory note with a nominal interest rate with Nodus Finance.

66. In either scenario, the principal of the CD or note would be a fraction of the customer's total deposit frozen at Nodus Bank and the customer would bear the loss of the remainder of the deposit.

67. In either scenario, the customer's money would be transferred to an entity owned, controlled, or operated by Concha and/or Ramirez and the customer would not have access to the funds for a period of years with no guarantee that they would ever see the return of their funds.

68. In summary, Concha and Ramirez used their customers' funds to enrich themselves and, when their fraudulent and criminal conduct caused a liquidity crisis, they closed up shop and utilized the liquidation process to further enrich themselves with their customers' deposits.

69. Upon information and belief, Concha and Ramirez operated numerous banks in Venezuela in a similar fashion and absconded with millions of dollars in deposits.

70. Concha and Ramirez ran a sophisticated scheme of deceit.

71. Concha and Ramirez knowingly created the conditions of the liquidity crisis that ultimately led to the surrender of its banking license and the dissolution of the bank.

72. Alto Tromen has suffered direct loss of the funds in the account since at least January 2023, and has been unable to access the funds.

73. Without access to the funds in the account, Alto Tromen has been unable to conduct its international business as intended, including incurring administrative costs, lost profits, and loss of business goodwill as a result.

74. Alto Tromen's property is in the possession of the Defendants.

75. Plaintiff has satisfied all conditions precedent to filing this lawsuit, including the serving of all required pre-suit notices and demands. Alternatively, all conditions precedent have been waived or excused.

**COUNT I – VIOLATION OF PUERTO RICO'S COMMERCIAL TRANSACTIONS ACT**
**(Against Nodus Bank)**

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

76. Alto Tromen seeks to redress the violations of Puerto Rico's Commercial Transactions Act in this Count through the remedies provided in 19 L.P.R.A. § 1105.

77. Nodus Bank had an express agreement with Alto Tromen to execute wire transfers.

78. Pursuant to 19 L.P.R.A. § 1102, Nodus Bank had an obligation to issue, on the respective execution dates, payment orders complying with Alto Tromen's orders, to follow Alto Tromen's instructions concerning any intermediary bank or funds-transfer system to be used in carrying out the funds transfers and to transmit the payment orders by the most expeditious available means, and to instruct any intermediary banks accordingly.

79. Nodus Bank accepted Alto Tromen's payment orders.

80. Nodus Bank failed to comply with one or more of these obligations resulting in the noncompletion of the funds transfer, the failure to use a designated intermediary bank, and/or the issuance of a payment order that did not comply with Alto Tromen's payment order.

81. Alternatively, Nodus Bank failed to execute one or more payment orders it was obliged by express agreement to execute.

82. Alto Tromen incurred expenses in connection with the funds transfers as well as incidental expenses and interest losses.

83. Alto Tromen suffered consequential damages in the form of lost investment and business opportunities and operational losses.

84. Alto Tromen made a pre-suit demand for compensation, but Nodus Bank refused the demand.

85. Alto Tromen's agreement with Nodus Bank permits consequential damages.

86. Defendants have damaged Plaintiff.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus International Bank, Inc., awarding incidental expenses, interest losses, damages, consequential damages, interest, attorney's fees pursuant to 19 L.P.R.A. § 1105(e), costs, and all additional relief deemed appropriate by the Court.

### COUNT II – BREACH OF CONTRACT
### (Against Nodus Bank)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

87. A valid and enforceable agreement existed between Nodus Bank and Alto Tromen.

88. Nodus Bank breached its contract with Alto Tromen.

89. The breach caused damages.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus International Bank, Inc., awarding damages,

interest, and costs.

## COUNT III – CONVERSION
### (Against Nodus Bank, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

90. This Count is brought pursuant to Florida law.

91. Alto Tromen seeks to hold each Defendant jointly and severally liable for conversion.

92. One or all of these Defendants possess Plaintiff's property.

93. Defendants committed and continue to commit acts of dominion wrongfully asserted over Alto Tromen's property inconsistent with its ownership therein.

94. Concha and Ramirez actively participated in the conversion, or at least had knowledge amounting to acquiescence of the theft.

95. Defendants committed an affirmative and intentional act of converting the funds to their own use by stealing the monies to which they were entrusted.

96. The money at issue is capable of identification.

97. To the extent the money was transferred, the money at issue retained its character after transfer and is readily identifiable.

98. Defendants' tortious conduct caused special damages.

99. Defendants have damaged Alto Tromen.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus International Bank, Inc., Tomas Niembro Concha, and Juan Ramirez awarding damages, special damages, interest, and costs.

## COUNT IV – CONVERSION
### (Against Nodus Finance, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

100. This Count is brought pursuant to Florida law.

101. Nodus Bank transferred Alto Tromen's money to Nodus Finance.

102. Alto Tromen seeks to hold each Defendant jointly and severally liable for conversion.

103. One or all of these Defendants possess Plaintiff's property.

104. Defendants committed and continue to commit acts of dominion wrongfully asserted over Alto Tromen's property inconsistent with its ownership therein.

105. Concha and Ramirez actively participated in the conversion, or at least had knowledge amounting to acquiescence of the theft.

106. Defendants committed an affirmative and intention act of converting the funds to their own use by stealing the monies to which they were entrusted.

107. The money at issue is capable of identification.

108. To the extent the money was transferred, the money at issue retained its character after transfer and is readily identifiable.

109. Defendants' tortious conduct caused special damages.

110. Defendants have damaged Alto Tromen.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus Finance, LLC, Tomas Niembro Concha, and Juan Ramirez awarding damages, special damages, interest, costs, and all additional relief deemed appropriate by the Court.

### COUNT V – CONVERSION
### (Against Nodus Financial Holdings, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

111. This Count is brought pursuant to Florida law.

112. Nodus Bank transferred Alto Tromen's money to Nodus Financial Holdings.

113. Alto Tromen seeks to hold each Defendant jointly and severally liable for conversion.

114. One or all of these Defendants possess Plaintiff's property.

115. Defendants committed and continue to commit acts of dominion wrongfully asserted over Alto Tromen's property inconsistent with its ownership therein.

116. Concha and Ramirez actively participated in the conversion, or at least had knowledge amounting to acquiescence of the theft.

117. Defendants committed an affirmative and intention act of converting the funds to their own use by stealing the monies to which they were entrusted.

118. The money at issue is capable of identification.

119. To the extent the money was transferred, the money at issue retained its character after transfer and is readily identifiable.

120. Defendants' tortious conduct caused special damages.

121. Defendants have damaged Alto Tromen.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus Financial Holdings, Inc., Tomas Niembro Concha, and Juan Ramirez awarding damages, special damages, interest, costs, and all additional relief deemed appropriate by the Court.

### COUNT VI – NEGLIGENCE
### (Against Nodus Bank, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

122. This Count is brought pursuant to Florida law.

123. Nodus Bank owed a duty of ordinary care to Alto Tromen.

124. Nodus Bank's conduct created a foreseeable zone of risk to Alto Tromen.

125. Nodus Bank breached a duty of care.

126. Nodus Bank's negligence damaged Alto Tromen.

127. The negligence went beyond the mere failure to return Alto Tromen's funds upon demand.

128. Nodus Bank created a liquidity crisis through both grossly negligent and intentional acts of Concha and Ramirez that included depleting its reserves with transfer of funds to entities owned or controlled by them or in which they held a financial interest and loaning money to corporations and individuals as a bank run was occurring.

129. Nodus Bank failed to conduct its operations prudently.

130. Nodus Bank's negligence occurred after Alto Tromen began efforts to transfer its money out of Nodus Bank.

131. Nodus Bank's negligence caused the conditions which led to insolvency and to the liquidation and, thus, caused the conditions which ultimately led to the loss of Alto Tromen's money.

132. Concha and Ramirez actively participated in the negligence, or at least had knowledge amounting to acquiescence of the acts constituting negligence.

133. Concha and Ramirez had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Alto Tromen would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

134. Concha's and Ramirez's conduct was reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

135. Nodus Bank is liable for Concha's and Ramirez's conduct because it actively and knowingly participated in such conduct, because the officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented

to such conduct, or because the employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus International Bank, Inc., Tomas Niembro Concha, and Juan Ramirez awarding damages, punitive damages, interest, costs, and all additional relief deemed appropriate by the Court.

### COUNT VII – FRAUD
### (Against all Nodus Bank, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

136. Nodus Bank, through Ramirez, made a false promise of future performance with no intention of performing.

137. Concha had knowledge amounting to acquiescence of the false promises.

138. Defendants always knew that they were going to liquidate the bank and always knew that Nodus Bank was never going to transfer the funds once they surrendered their banking license and agreed to liquidation.

139. Alto Tromen relied on these false statements and promises to its detriment.

140. Alto Tromen suffered damages.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendant Nodus International Bank, Inc., Tomas Niembro Concha, and Juan Ramirez awarding damages, special damages, interest, costs, and all additional relief deemed appropriate by the Court.

### COUNT VIII – UNJUST ENRICHMENT
### (Against all Nodus Finance, Nodus Financial Holdings, Concha, and Ramirez)

Alto Tromen realleges paragraphs 1 through 75 as though fully set forth herein.

141. This Count is brought pursuant to Florida law.

142. Plaintiff conferred a benefit on Defendant(s), who has knowledge thereof.

143. Defendant(s) accepted and retained the conferred benefit.

144. Under the circumstances, it would be unjust to allow the Defendant(s) to retain the benefit without paying for it.

145. This Count is brought in the alternative to all other counts.

**WHEREFORE**, Plaintiff Alto Tromen, S.A., respectfully requests the entry of a judgment in its favor against Defendants awarding all damages, interest, costs, and all additional relief deemed appropriate by the Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff Alto Tromen, S.A., demands a trial by jury on all issues so triable.

Respectfully submitted,

By: */s/ Alejandro F. Garcia*
Alejandro F. Garcia, Esq.
Florida Bar No. 98505
agarcia@ramhofergarcia.com
Alexis De La Rosa, Esq.
Florida Bar No. 1038679
adelarosa@ramhofergarcia.com
RAMHOFER | GARCIA
75 Valencia Avenue
Suite 1050
Coral Gables, FL 33134
Telephone: (305) 481-9733
Facsimile: (954) 697-0341
*Attorneys for Plaintiff Alto Tromen, S.A.*